IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
JAMES MICHAEL KELLER,       )
                            )
     Plaintiff,             )
                            )        CIVIL ACTION NO.
     v.                     )        2:19cv207-MHT
                            )            (WO)
HYUNDAI MOTOR               )
MANUFACTURING,              )
                            )
     Defendant.             )
```

### OPINION AND ORDER

During a company-wide downsizing in 2018, defendant Hyundai Motor Manufacturing, also known as HHMA, terminated the longstanding employment of plaintiff James Michael Keller, a supervisor in the company's production division.  Keller was then 50 years old, and he brought suit against the company thereafter, alleging that Hyundai fired him because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621.

The company responded that it fired Keller, not for his age, but because he was either unable or unwilling

to prevent the workers he oversaw from attempting to unionize.  If true, this may well have violated the National Labor Relations Act (NLRA), 29 U.S.C. § 151. But Keller chose instead to address this defense by amending his complaint to add a claim under § 25-7-35 of the Code of Alabama, part of the State's right-to-work law.

Keller's suit is now before the court on the parties' cross-motions for summary judgment.  The court has jurisdiction over his ADEA claim pursuant to 28 U.S.C. § 1331 (federal-question), and it exercises supplemental jurisdiction over his state claim pursuant to 28 U.S.C. § 1367.  On the record presented, there exists a genuine issue of material fact as to whether the company's assertion that it fired Keller for the union activity of his subordinates is pretextual.  Accordingly, the company's motion for summary judgment on Keller's ADEA claim will be denied.  However, it is apparent that § 25-7-35 of the Code of Alabama does not provide Keller

2

a remedy for his firing even if, as Hyundai says, it was based on the union efforts among his team members. As such, the company's motion for summary judgment on Keller's state claim will be granted, and Keller's motion for partial summary judgment on this claim will be denied.

## I. SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment

3

is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.*

## II.   FACTUAL BACKGROUND

Keller was hired in 2004 to work in Hyundai's stamping shop, where employees mold sheet steel into the component parts of the company's automobiles. *See* Jan. 22, 2020, Depo. of James Keller (doc. no. 61-7) at 28. He was promoted to team leader a year later and to group leader the year after that. *See id.* at 28-31. When Keller was fired from Hyundai in 2018, he was one of two group leaders in the stamping shop, although Hyundai has since added a third group-leader position to that department. *See* Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 5-6, 25.

Faced with declining sales in early 2018, Hyundai determined that layoffs of about two dozen salaried employees were necessary, and it delegated to senior

**4**

management of each division the responsibility for recommending who should be let go. *See id.* at 13-14. Of the 21 employees removed during this so-called "reorganization," seven, including Keller, were selected from the production staff by the division's vice president Christopher Susock. *See id.* at 18.

At that point, Hyundai had for several years been the focus of a unionization campaign by the United Auto Workers (UAW). Once this campaign became public, workers who favored the union started wearing gold shirts under their work attire to show their support. Hyundai does "not believe that a third party such as a union is necessary." HMMA's Position on Unions (doc. no. 61-3) at 16. The company therefore "trained its Group Leaders on how to lawfully and persuasively explain the benefits of remaining union-free" and "the disadvantages of unionization." Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 7.

According to the declarations and deposition testimony of the people involved in recommending Keller for termination, an unusually large number of the workers he supervised wore the gold shirts that evidenced their support for the UAW campaign.  Hyundai says it expected group leaders such as Keller to convince their supervisees not to support the union, so it took the number of union sympathizers on his shift as indication that he was ineffective in his role.  *See id.* at 15-16; Decl. of Christopher Susock ("Susock Decl.") (doc. no. 61-4) at ¶¶ 24(b), 26(b).  As Susock explained, his decision to recommend Keller's termination "primarily related to the fact that Keller had a substantial number of pro-union Team Members in his group, and he was not taking sufficient steps to lead his group so that his Team Members did not believe that they needed a union." Susock Decl. (doc. no. 61-4) at ¶ 26(b).  Hyundai says this showed that Keller's supervisees had "low morale," a term it ostensibly uses to mean "that many of Keller's

Team Members exhibited that they felt the need for third party representation instead of leadership from their own Group Leader." *Id.* at ¶ 24(b); *see also* Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 8 ("By employee morale, HMMA is referring to how strongly its Team Members feel that they need third party (union) representation in the workplace.").

As Hyundai tells it, anxiety about the union sympathies of Keller's subordinates was so great that the highest echelons of the company's leadership took notice. Vice president Susock says Hyundai's CEO personally told him "that he was very concerned about the number of Team Members on Keller's shift wearing these gold colored t-shirts, and further stated that the Group Leader for the shift did not appear to be a strong leader for the Company's position on third parties." Susock Decl. (doc. no. 61-4) at ¶ 20. The CEO apparently warned Susock that his "employment at HMMA could be in jeopardy if this concern was not properly addressed." *Id.*

7

Susock says that he included Keller among the employees he recommended for termination as part of the company's March 2018 reorganization after this admonishment by Hyundai's chief executive. As he testified, "if something wasn't done, it was going to turn into a much greater problem for us as a company." Susock Depo. (doc. no. 61-9) at 60. Director of Production Support Craig Stapley, with whom Susock consulted before recommending Keller for termination, says he agreed that Susock should recommend Keller's termination because "he believed that [Hyundai] needed a Group Leader in the Stamping Shop who would engage on the company's position when it came to third party intervention." Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 14-15. Stapley testified that "[o]ur concern, as a company, was a large penetration of people that felt they needed a third-party intervention in [Keller's] group." Stapley Depo. (doc. no. 61-10) at 93. In sum, Hyundai says it fired Keller because his

**8**

group members had "low morale," by which it means that many of them were inclined to support the union, Susock Decl. (doc. no. 61-4) at ¶ 24(b); because Keller "was not providing leadership," by which it means that he did not persuade enough of his group members to oppose the union, Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 18; and because Keller needed "constant supervision," by which it means that his superiors had to pull his group members away from the union themselves, Stapley Depo. (doc. no. 61-10) at 75.

Keller tells a different story. He points to his contemporaneous performance evaluations, which show that his leadership skills were regularly judged by his superiors to meet or exceed the company's expectations. *See, e.g.*, 2015 Keller Performance Evaluation (doc. no. 61-8) at 54; 2016 Keller Performance Evaluation (doc. no. 61-8) at 64; 2017 Keller Performance Evaluation (doc. no. 61-8) at 74. These evaluations include generally favorable comments from his supervisors, none of which

mention the union activity among his team members that supposedly so alarmed the company. *See, e.g.*, 2016 Keller Performance Evaluation (doc. no. 61-8) at 66; 2017 Keller Performance Evaluation (doc. no. 61-8) at 76.

At the time of Keller's firing, he was 50 years old. Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 4. His counterpart stamping-shop group-leader Bill Carter, who was not included in the reorganization, was 37 years old. *Id.* at 6. Keller's replacement was 37 years old as well. *Id.* at 25. Of the 21 Hyundai employees selected for reorganization, 18 were over the age of 40. *See* Report of Carole M. Amidon (doc. no. 61-13) at 17 tbl.1. Hyundai's statistical expert found that, during the reorganization, employees over the age of 40 were more than three times as likely as their younger counterparts to be selected for termination. *See id.* at 19-20.

### III.  DISCUSSION

Keller brings two claims in his amended complaint. His first is brought under the ADEA, 29 U.S.C. § 621, alleging that his termination constituted age discrimination.  His second is that Hyundai's actions "violated Alabama public policy and Ala. Code (1975) § 25-7-1, et seq." First Amended Complaint (doc. no. 48) at 8.  Although § 25-7-1 of the Code of Alabama is a policy declaration that, "The right to live involves the right to work" and does not expressly provide a private right of action, Ala. Code § 25-7-1, Keller has since clarified that he intends to state a claim under §§ 25-7-33 and 25-7-35 of the Code of Alabama instead. Section 25-7-33 prohibits employers from requiring that any person "abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment," and § 25-7-35 provides a right of action to "[a]ny person who may be

denied employment or be deprived of continuation of his employment" in violation of § 25-7-33.

Hyundai has moved for summary judgment on both of Keller's claims, and Keller has moved for partial summary judgment on his state claim.  The court considers each claim in turn.

## A.  Age Discrimination Claim

Hyundai makes three arguments in support of its motion for summary judgment on Keller's ADEA claim. First, the company says that Keller "cannot sustain simultaneous claims for age discrimination and a right to work violation" because the but-for causation required for liability under the ADEA means that "age must still be the reason--not just part of the reason or a contributing factor--for the challenged action."  Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 29-31 (emphasis in original).  Second, the company argues that Keller has presented insufficient evidence to show

a pattern of discrimination that would give rise to an inference that he was fired because of his age. *See id.* at 39-42.

Finally, Hyundai argues that Keller fails to meet his burden at several points of the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because he does not show either (1) that he was qualified for the position he held, (2) that a similarly situated younger individual was treated less favorably than he, or (3) that Hyundai's purported non-discriminatory reason for his firing--namely, that he did too little to discourage union activity among his supervisees--was pretextual. *See* Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 32-39, 42-47.

## 1.   But-For Causation

Hyundai argues as a threshold matter that Keller's ADEA claim is barred because "an employee cannot claim

13

that age is a motive for the employer's adverse conduct and simultaneously claim that there was any other proscribed motive involved." *Id.* at 29 (quoting *Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271-72 (N.D. Ala. 2009)). Hyundai says this rule is based on the general principle of but-for causation, which is the degree of causation that a plaintiff must show to succeed on an ADEA claim. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) ("[T]he language 'because of' in the ADEA statute means that a plaintiff must prove that discrimination was the 'but-for' cause of the adverse employment action."). In other words, the ADEA requires Keller to prove that he would not have been terminated but for his age. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009). Hyundai takes that but-for cause requirement to mean that Keller "cannot sustain simultaneous claims for age discrimination and a right to work violation. He must choose which theory he is pursuing, or summary judgment is due to be granted on all

**14**

of his claims." Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 29-30.

This argument crashes, Wile E. Coyote-esque, into veritable mountains of contrary precedent. The Supreme Court has made clear that, "Often, events have multiple but-for causes." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020). "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id*. at 1739. Therefore, "the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id*. (emphasis in original). A but-for causation requirement, the Supreme Court reiterated, differs from a requirement that the factor at issue be the sole cause of the employment action--a standard that would make "the confluence of multiple factors" insufficient to find liability. *Id.*

15

Hyundai argues that a sole-causation standard, rather than the Court's articulation of but-for causation, applies to Keller's ADEA claim because "the ADEA requires more than what must ordinarily be proven under an analogous ... action" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a and 2000e through 2000e-17.  Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 30 n.33 (quoting *Sims*, 704 F.3d at 1336).

It is true that the ADEA's liability provision is narrower than that of Title VII, in the sense that the ADEA does not allow liability when age was "simply a motivating factor" in the employment decision rather than a but-for cause.  *Gross*, 557 U.S. at 174-76.  Indeed, the availability of motivating-factor liability under Title VII is written into the statute itself.  *See* 42 U.S.C. § 2000e-2(m) (permitting liability with proof that one of the statute's protected characteristics "was a motivating factor for any employment practice, even

though other factors also motivated the practice"). But the absence of such a provision in the ADEA does not change the fact that but-for causation suffices for liability under both statutes, nor does it make but-for causation mean something different for Title VII claims than it does for ADEA claims. *See Sims*, 704 F.3d at 1336 n.9. Accordingly, the court will not grant Hyundai summary judgment on Keller's ADEA claim on this basis.


## 2.   Pattern of Discrimination

An ADEA plaintiff can make out a prima-facie case of age discrimination by "presenting a statistical pattern of discrimination." *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1457 (11th Cir. 1997). In the context of company-wide reductions in force, the Eleventh Circuit Court of Appeals has held that, when evidence shows that the rate at which older employees are terminated is two or three standard deviations away from the rate at which younger employees were fired, this evidence demonstrates

17

a sufficient pattern to support an inference of discrimination. *See Benson v. Tocco, Inc.*, 113 F.3d 1203, 1209 (11th Cir. 1997); *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 852 (11th Cir. 1997). According to Hyundai's expert Dr. Carole Amidon, a difference of two or three standard deviations means that there is less than a 5 % probability that the higher rate occurred by chance, rather than being caused by the employees' age. *See* Decl. of Carole M. Amidon (doc. no. 61-13) at ¶ 15(b). Amidon credibly explains that this 5 % threshold is often used by statisticians to determine whether a result is "statistically significant." Report of Carole M. Amidon (doc. no. 61-13) at 16 n.6.

Twenty-one employees were selected for termination in the course of Hyundai's 2018 reorganization. These employees all came from the ranks of Specialist, Group Leader, Assistant Manager, or Manager. *See id.* at 17 tbl.1. At the time of the restructuring, Hyundai had 533 employees across these four ranks, and 330 of them--or

18

about 62 %--were over the age of 40.  *Id.*  Among the 21
reorganized employees, only three were under the age of
40, and no employees under the age of 40 at the Group
Leader level or above were selected for reorganization.
*Id.*  All told, employees over the age of 40 were selected
for reorganization at more than three times the rate of
younger employees.  *Id.* at 19-20.

Hyundai makes much of Dr. Amidon's opinion that the
higher rate at which older employees were terminated in
the company's reorganization was not statistically
significant because there is greater than a 5 %
probability that the rate occurred by chance.  *See* Def.'s
Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at
40-41.  This is true--barely: Dr. Amidon found that there
is a 6.9 % probability that Hyundai selected older
employees for reorganization at three times the rate of
younger employees by chance.  *See* Report of Carole M.
Amidon (doc. no. 61-13) at 20 tbl.4.

Based on the statistical evidence in Dr. Amidon's report, the court is skeptical that age was not a causal factor in at least some of Hyundai's selections of employees for reorganization.  But while the Eleventh Circuit has found statistical evidence sufficient to support an inference of discrimination when the data showed a termination rate of older employees three times that of their younger colleagues, *see Benson*, 113 F.3d at 1209, the circuit court has also made clear that it considers the threshold of two or three standard deviations an important one in determining whether statistical evidence, standing alone, permits such an inference, *see id.*  Accordingly, the court agrees with Hyundai that Keller has not shown sufficient statistical evidence of a pattern of age discrimination to give rise, without more, to an inference that his age was a but-for cause of his firing.

### 3.   Burden-Shifting Framework

20

An ADEA plaintiff can alternatively demonstrate age discrimination based on circumstantial evidence through a modified version of the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under Eleventh Circuit law, the plaintiff may establish a prima-facie case of discrimination by showing "(1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). If the plaintiff shows this prima-facie case, the burden shifts to the defendant to provide evidence of a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012)). The burden

then shifts back to the plaintiff to show that the defendant's reason is a pretext. *Id.*

In reduction-of-force cases and in cases where the plaintiff's position was eliminated entirely, a different prima-facie case is available. In such cases, a plaintiff may alternatively meet his initial burden by demonstrating that he was in the protected age group, qualified for the relevant position, adversely affected by an employment action, and by showing "evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age." *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003). In other words, showing, as an element, that the plaintiff was replaced by a younger person is not the only route. *See id.* This alternative prima-facie case is available because "the employer seldom seeks a replacement for the discharged employee" in reduction-of-force situations. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.

1989) (quoting *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir. 1987)).

Although Keller's case involved a company-wide reduction in force, Keller in particular was replaced by Hyundai. *See* Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 24. As such, the court looks to the prima-facie case that applies outside the reduction-in-force context. However, the result of the analysis would be the same regardless. This is because, as discussed below, the evidence in the record would make it reasonable for a fact finder to conclude that Hyundai intended to discriminate based on age.

Hyundai does not contest that Keller was between the ages of 40 and 70 when he was fired or that terminating him subjected him to an adverse-employment action. But the company argues that Keller falls short of his burden at three points: first, by failing to prove that he was qualified for his position; second, by failing to show that Hyundai "treated a similarly situated employee

23

outside his protected class ... more favorably," Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 37; and, finally, by failing to rebut the non-discriminatory reason Hyundai proffers for its action.

The first two of these arguments go nowhere. As the Eleventh Circuit has explained, "if a plaintiff enjoyed a long tenure at a certain position, we can infer that he or she is qualified to hold that particular position." *Liebman*, 808 F.3d at 1299 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999)). Keller had held his position as group leader in the stamping shop for more than a decade when he was terminated in 2018. *See* Jan. 22, 2020, Depo. of James Keller (doc. no. 61-7) at 31. But in Hyundai's view, again, all roads lead to unions; the company takes the position that Keller demonstrated that he was actually unqualified for the job he had held for a decade because he didn't do what was expected of him when the

union organizing began among his supervisees. *See* Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 34-35.  This argument may provide Hyundai a reason for firing Keller unrelated to his age, but it does not show that he was unqualified in the first place for his longstanding position at the company.

Hyundai founders as well in its argument that Keller cannot make out a prima-facie case of discrimination because he does not point to a similarly situated younger employee who was treated more favorably.  Hyundai says the Keller's claim fails because he "has not identified any Group Leader in Stamping who had the same performance deficiencies and was not restructured."  *Id.* at 37.  As an initial matter, Hyundai's position that only another group leader in the stamping department could be similarly situated to Keller slices the bacon far too finely.  When Keller was terminated, there was only one other group leader in the stamping department with him; Hyundai's view would mean that Keller would necessarily

25

be precluded from making out a prima-facie case of discrimination unless his performance reviews were better than those of the sole other employee who held the same job title in the same department. *See id.* at 37-38 ("Plaintiff's direct supervisor during the relevant period evaluated Plaintiff the lowest and he evaluated Carter higher. Therefore, Plaintiff cannot point to a comparator who was treated more favorably."). The Eleventh Circuit has rejected the position that a plaintiff must "prove purely formal similarities--*e.g.*, that she and her comparators had precisely the same title." *Lewis v. City of Union City*, 918 F.3d 1213, 1227 (11th Cir. 2019) (en banc).

As applied to this case, however, Hyundai's argument fails for a more fundamental reason too. In the context of the ADEA, it is sufficient to raise an inference of discrimination for the plaintiff to show that "a substantially younger person filled the position from which he was discharged." *Liebman*, 808 F.3d at 1298.

In this case, then-50 year old Keller was fired by Hyundai and was replaced by Zach Morris, who was 37 years old at the time.  Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 24-25.  The Eleventh Circuit has held that a replacement seven years younger "qualifies as substantially younger," *Liebman*, 808 F.3d at 1299; the 13-year difference between Keller's and Morris's ages suffices too.  No more is required for Keller to meet his initial burden, and Hyundai's arguments about which employees are similarly situated to him do not carry weight here.

Because Keller has made out a prima-facie case of discrimination, the burden shifts to Hyundai to present evidence that the reason for his firing was unrelated to his age.  This the company has done in spades.  Time and again in its briefing, Hyundai reiterates some variation of its theme: Keller was fired for failing to prevent union organizing, not for his age.  *See, e.g.*, Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 7-11,

14-18, 24-25, 34-36, 45-46.  Accordingly, the burden shifts back to Keller to show that this asserted reason was pretextual and that age was really a but-for cause of his firing.  To reiterate a point made above, Keller need not demonstrate that his alleged unwillingness or inability to combat union efforts among his subordinates played no part in Hyundai's decision to fire him.  There may be multiple but-for causes for his termination.  But to survive summary judgment on his ADEA claim, Keller must show sufficient evidence that a jury could reasonably find that he would not have been fired but for his age.  The court concludes that he has done so.

In determining at the pretext stage whether Keller has shown a genuine issue of fact that precludes summary judgment in favor Hyundai, the court looks to the totality of the evidence in the record, including evidence that was also relevant at earlier points in the burden-shifting analysis of his claim.  *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 n.10 (1981)

("A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.  Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.").  Because none of the contemporaneous written assessments of Keller's work suggested that the supposed union activity of his supervisees was of particular concern to Hyundai, a jury could reasonably conclude that the company's anti-union explanation is pretextual and that Keller's age was in fact a but-for cause of his firing.

As mentioned above, Keller's performance evaluations from the relevant years never discuss, even obliquely, concerns about the union activity of his subordinates. *See, e.g.*, 2016 Keller Performance Evaluation (doc. no. 61-8) at 66; 2017 Keller Performance Evaluation (doc. no. 61-8) at 76.  The closest they come are two brief comments that Keller should "engage more" with his team members,

including on company policy and procedures.   2016 Keller Performance Evaluation (doc. no. 61-8) at 66; 2017 Keller Performance Evaluation (doc. no. 61-8) at 76.   In context, however, these seem to be referring to problems with injuries among Keller's subordinates and the need to ensure that Hyundai's safety protocols and protective equipment policies were followed.   *See* 2016 Keller Performance Evaluation (doc. no. 61-8) at 62 (noting high number of accidents and instructing Keller to "constantly remind [team members] to follow ALL safety requirement[s]").

Among the documentary evidence preceding Keller's firing, what comes nearest to raising the union issue is a 2016 assessment of the stamping shop that scathingly reviewed the leadership skills of several members of the shop management, including Keller.   The report criticized Keller as "[v]ery afraid of the [team members]" and as "disengag[ing] himself from any form of controversy," including a willingness to "bend policy if pushed by

30

[team members]." Byrd Report (doc. no. 61-4) at 10. Keller, the report said, had "good technical skills but poor leadership skills." *Id.* Censorious as this report may be, it never expressly linked the problems it identified in Keller's leadership with union sympathies among his subordinates; indeed, the report did not mention unions at all. Nor does Hyundai explain the absence of any expressions of significant concern about Keller's leadership abilities either in his 2016 performance evaluation, which covered much the same time period as the stamping shop management assessment, or in the following year's evaluation.

In light of the lack of documentary evidence that Hyundai was concerned about union efforts among Keller's team at the time of his firing--or even that the company was seriously troubled by his leadership abilities--a jury could reasonably find the explanations in the declarations and deposition testimony of Hyundai leadership to be *post hoc,* after the fact, and thus

pretextual.  And considering Keller's replacement by a younger employee, the fact that 18 of the 21 fired employees were over the age of 40, and the statistical evidence, albeit not statistically significant, that older employees were three times as likely as their younger counterparts to be included in Hyundai's reorganization, a jury could also reasonably find that age was a but-for cause of Keller's firing.  There are disputed issues of fact.[1]  Accordingly, summary judgment in favor of Hyundai will be denied on Keller's ADEA claim.

---

1. Although Hyundai calls the layoffs a "reorganization" and contends that it terminated the employees to cut costs during economic difficulties, the company not only replaced Keller but added a third group leader to the stamping shop a few months later.  *See* Def.'s Br. in Supp. Mot. for Summary Judgment (doc. no. 60) at 24-25.  The decision to replace Keller and then add a new employee at his position soon thereafter draws into question whether his discharge was really part of the reorganization.

32

## B.   State Claim

Keller also brings a state claim under § 25-7-35 of the Code of Alabama.  As noted above, § 25-7-35 provides a private right of action to anyone denied or deprived of a job in violation of § 25-7-33, which prohibits employers from requiring people to "abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment."  Keller added this claim to his complaint in response to Hyundai's argument that the union sympathies of his team members led to his firing.  *See* Pl.'s Mot. to Amend Complaint (doc. no. 39) at 3.

No party argues that Keller was terminated for joining a union.  And § 25-7-33 prohibits employers from firing people for their "membership in any labor union," Ala. Code § 25-7-33, not for failing to "condemn[] membership in any labor union," Pl.'s Br. in Supp. Mot. for Partial Summary Judgment (doc. no. 57) at 18.  As such, Keller's potential theory of liability under

33

§ 25-7-35 is ultimately one of third-party retaliation: He was fired because of the union membership of his supervisees.

The statutes under which Keller brings this claim do not support such a theory.  Section 25-7-33 guarantees that no persons may be fired for their membership in a union--in other words, that no individuals may personally be required to abstain from union membership as a condition of their employment.  The evidence does not show that Hyundai required Keller or his group members to refrain from union membership as a condition of their own employment; the company's actions therefore did not violate the terms of § 25-7-33.  And § 25-7-35 provides a cause of action to "any person who may be denied employment or be deprived of continuation of his employment in violation of ... [§] 25-7-33."  Without a violation of § 25-7-33, there is no cause of action under § 25-7-35.

The three cases Keller cites in support of his contrary position are all off-point.  The decision of the Alabama Supreme Court in *Moving Picture Machine Operators Local No. 236 v. Cayson*, 281 Ala. 468 (1967), concerned an employment contract that "require[d] seniority based on longevity of union membership as a condition of continuation of employment."  *Id.* at 479.  Because employment that requires union seniority requires union membership, the contract violated the plain terms of the predecessor statute to § 25-7-33 in effect at the time. *See id.*  That holding has no salience for Keller's claim. The contract in *Moving Picture Machine Operators* made individual workers' ability to get a job depend on their own union membership--precisely the act prohibited by § 25-7-33, and precisely what Hyundai did not do here.The same problem arises with Keller's argument regarding *Gray v. Jefferson Warrior Railroad Co., Inc.*, No. 2:09-cv-02581-JEO, 2010 WL 11565853 (N.D. Ala. Oct. 1, 2010) (Ott, M. J.), report and recommendation adopted,

35

2010 WL 11566241, (N.D. Oct. 25, 2010 (Bowdre, J.). There, the magistrate judge found that an employer who denied the plaintiff a job because of his efforts to unionize past workplaces had violated § 25-7-33. *Id.* at *10-11. Again, the aggrieved employee was one whose own membership in labor organizations had cost him a job. The case therefore provides no support for Keller's position that Alabama law protects workers from being terminated due to other employees' union membership.

Finally, the decision of another judge of this court in *Professional Helicopter Pilots Ass'n, Local 102 v. Lear Siegler Services, Inc.*, 326 F. Supp. 2d 1305 (M.D. Ala. 2004) (Albritton, J.), is wholly inapposite. There, the court held that Alabama's right-to-work laws apply in areas where the State's jurisdiction is concurrent with that of the federal government. *See id.* at 1314-15.

That holding bears no relation to this case whatsoever, nor lends any support to Keller's argument.[2]

The text of § 25-7-33 is specific about the conduct it prohibits.  Firing Keller because of the union sympathies of his subordinates is not what that statute forbids.  Although such conduct might violate the NLRA, which bars employers from "interfer[ing]" with workers' efforts to unionize and from using hiring or firing practices that "encourage or discourage membership" in a union, 29 U.S.C. § 158(a), Keller has chosen not to sue

---

2.  In his reply brief, Keller raises two further arguments: that he was fired for refusing to violate § 25-7-6, which declares that people in Alabama may join or not join a union "free from interference by force, coercion, or intimidation," or by threats thereof; and that Keller has a claim for the tort of outrage because he was fired in violation of Alabama public policy.  *See* Pl.'s Reply Br. in Supp. Mot. for Partial Summary Judgment (doc. no. 70) at 10-11.  As to the first of these arguments, there is no evidence that any Hyundai employee was coerced or intimidated not to join the union, nor that Keller was asked to coerce or intimidate anyone.  As to the second, Keller does not allege the tort of outrage in his complaint; arguments that he could have done so are irrelevant here.

under that statute.  Section 25-7-35 does not provide him a remedy.

Hyundai's motion for summary judgment will granted, and Keller's motion for partial summary judgment will be denied, as to Keller's state claim.


*  *  *


For the foregoing reasons, it is ORDERED that:

(1) Defendant Hyundai Motor Manufacturing's motion for summary judgment (doc. no. 59) is denied as to plaintiff James Keller's ADEA claim.  This claim will proceed to trial.

(2) Defendant Hyundai Motor Manufacturing's motion for summary judgment (doc. no. 59) is granted as to plaintiff Keller's state claim; plaintiff Keller's motion for partial summary judgment (doc. no. 56) is denied as to this claim; judgment is entered in favor of defendant

Hyundai Motor Manufacturing and against plaintiff Keller as to this claim.

This case is not closed.

DONE, this the 19th day of January, 2021.

                             /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE